Vidal RODRIGUEZ, Plaintiff–Appellant,

v.

Eloise ANDERSON and Mark Hoover,
Defendants–Appellees.

No. 91–1184.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 6, 1991.

Decided Aug. 26, 1992.

Victor Arellano, Aaron N. Halstead (argued), Lawton & Cates, Madison, Wis., for plaintiff-appellant.

David C. Rice, Asst. Atty. Gen., Richard Moriarty (argued), Wisconsin Dept. of Justice, Madison, Wis., for defendants-appellees.

Before COFFEY and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Plaintiff Vidal Rodriguez, a Mexican Hispanic, brought a civil rights action under 42 U.S.C. §§ 1981, 1988 and 2000e against two supervisory employees of the Wisconsin Department of Health and Social Services [DHSS]. Mr. Rodriguez alleged racial dis-

---

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

crimination in the procedures used in hiring the Equal Opportunity Specialist [EOS–7], an affirmative action and civil rights compliance officer position in the DHSS for which the plaintiff applied but was not chosen. Following a four-day jury trial, judgment was entered in favor of the defendants on November 30, 1990. Two weeks later the district court denied plaintiff's motion for a new trial.

Appealing from the judgment and the denial of his motion for new trial, Mr. Rodriguez challenges the trial court's preclusion of evidence during cross-examination. Defendants have moved for dismissal of the appeal or summary affirmance. For the following reasons, we affirm the rulings of the district court and deny the defendants' motion to dismiss.

## I. MOTION TO DISMISS

Ms. Anderson and Mr. Hoover have filed a motion to dismiss this appeal or for summary affirmance on the grounds that Mr. Rodriguez failed to file a full transcript of the proceedings before the district court and failed to comply with eight other requirements of the Federal Rules of Appellate Procedure and corresponding local rules. Plaintiff has responded that he filed the complete transcript of the relevant portions of the trial, and that he was protecting the court from the inundation of paper that would occur if every appellant filed a complete transcript.

The background underlying this issue is significant. In response to defendants' motion to dismiss the appeal and in accordance with Fed.R.App.P. 10(e), Mr. Rodriguez filed a motion in the district court for leave to supplement the appellate record with material portions of the transcript erroneously omitted by him. Defendants objected to the motion, criticizing Mr. Rodriguez's unexplained failure to comply initially with the filing requirements and advising the district court that it "should not be required to clutter its files and distract its

attention with a needless series of briefs— only because Rodriguez failed initially to fulfill his obligations as appellant." R. at 87 (attachment B at 8). Following a hearing on the issue, the district court granted the motion and allowed Mr. Rodriguez to supplement the record with additional portions of the trial transcript.

It is true that the plaintiff filed only a partial transcript, both before and after the supplementation. He has argued that he included all of the record he deemed necessary, with the transcript "of *all* evidence *relevant* to [the] finding or conclusion" he challenges on appeal, in compliance with Fed.R.App.P. 10(b)(1) and (2). Defendants seem to want retribution, in the form of dismissal or summary affirmance, from the unrepentant plaintiff, rather than a full record from which this court can make a meaningful review.[1]

However, both parties failed to follow the dictates of Fed.R.App.P. 10(b)(3), which states:

> Unless the entire transcript is to be included, the appellant shall, within the 10 days time provided in (b)(1) of this Rule 10, file a statement of the issues the appellant intends to present on the appeal and shall serve on the appellee a copy of the order or certificate and of the statement. If the appellee deems a transcript or other parts of the proceedings to be necessary, the appellee shall, within 10 days after the service of the order or certificate and the statement of the appellant, file and serve on the appellant a designation of additional parts to be included. Unless within 10 days after service of such designation the appellant has ordered such parts, and has so notified the appellee, the appellee may within the following 10 days either order the parts or move in the district court for an order requiring the appellant to do so.

Instead of following this procedure, Mr. Hoover and Ms. Anderson sought dismissal of Mr. Rodriguez's appeal and argued

---

**1.** Defendants' vehement argument in support of their motion to dismiss this appeal is a stark contrast with their sloppy appellate brief: Its table of contents listed the wrong pages for the argument; some pages were missing from the brief; and not one cited case was a ruling of this circuit or a decision concerning Title VII or § 1981.

against his motion to supplement the record.

■ This court has the power to sanction an appellant or even to dismiss the appeal because of his violation of the Federal Rules of Appellate Procedure. *Wilson v. Electro Marine Systems, Inc.*, 915 F.2d 1110, 1117 (7th Cir.1990). It is obvious that an appellate court has no alternative but to dismiss an appeal if the absence of the transcript precludes meaningful review. *Fisher v. Krajewski*, 873 F.2d 1057, 1061 (7th Cir.1989), *cert. denied*, 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 738 (1990). It is equally clear that we expect and are entitled to strict compliance with the appellate rules and our local rules. *Id.* at 1068. However, because Mr. Rodriguez complied with this court's order at oral argument to file a complete transcript within seventy-two hours, we can now conduct a meaningful review and are no longer required to render a judicial decision founded on speculation. *See id.* at 1061. Therefore, even though we note that the parties' failure to comply with Fed.R.App.P. 10(b)(3) has caused inconvenience and delay in resolving this appeal, *see Garnes v. Gulf & Western Mfg. Co.*, 789 F.2d 637, 640 n. 3 (8th Cir.1986), we deny defendants' motion for dismissal or summary affirmance and turn to the merits of this appeal.

## II. BACKGROUND

Mr. Rodriguez was one of the top four candidates chosen to interview for the EOS–7 position. The other three were Pat Jackson–Ward (a Black female), Georgina Taylor (an Hispanic female), and Janet Schmidt (a Caucasian female). The position description states that the EOS–7 employee "is responsible for services that cut across geographic functional program boundaries of [the County Departments of Social Services] and local community ser-

vice agencies, county/tribal boundaries and federal and state laws." Under "Goals and Worker Activities," the description lists the percentage of time that the worker dedicates to particular tasks. Of the listed duties, sixty-five percent is civil rights and affirmative action service work for all minorities and thirty-five percent concerns services for the Black community.[2]

The three-person committee interviewing the candidates included defendant Mark Hoover, Director of the Bureau of Management and Budget in the Division of Community Services, who was the immediate supervisor of the EOS–7 position. The panel unanimously chose Pat Jackson–Ward, the person who had held the EOS–7 position on an acting basis for nearly ten months. After considering the panel's recommendation, the achievement history questionnaires of the candidates, and the written examination results, Mr. Hoover recommended Pat Jackson–Ward to defendant Eloise Anderson, Administrator of the DHSS Division of Community Services. Ms. Anderson authorized Mr. Hoover to hire Ms. Jackson–Ward.

Mr. Rodriguez filed this action to challenge the selection of Ms. Jackson–Ward on February 21, 1990. At trial the plaintiff presented to the jury the testimony of thirteen witnesses. On November 30, 1990, the verdict was returned for the defendants. Plaintiff now claims that the trial court erred in precluding him from cross-examining defendant Hoover on two factual issues. We will examine each in turn.

## III. STANDARD OF REVIEW

■ When reviewing a trial court's evidentiary decisions, we accord great deference to its determinations, and will not overturn them in the absence of a clear abuse of discretion.[3] *New Burnham Prai-*

---

**2.** The position description separated the Black community services into four categories or programs. *See* Appendix at 104–110. Defendant Hoover explained at trial that the description, written by the previous EOS–7, was an accurate reflection of the job performed by her at that time. When questioned about the focus on the Black community, the defendants testified that

they believed it inappropriate to single out any minority group, and that they intended to delete such references from the position description. They further testified that they did not ask questions regarding those duties in the interview sessions.

**3.** Plaintiff's statement that the Seventh Circuit has not formulated a particularized standard of

*rie Homes v. Village of Burnham,* 910 F.2d 1474, 1482 (7th Cir.1990). Our review of a trial court's denial of plaintiff's motion for a new trial requires the same standard.

> As with all motions for new trial, we review the trial court's decisions [concerning trial conduct] for abuse of discretion, *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556 [104 S.Ct. 845, 850, 78 L.Ed.2d 663] (1984), and reverse only if they " 'strike us as wrong with the force of a five-week old, unrefrigerated dead fish.' " *Dutchak v. Central States, Southeast and Southwest Areas Pension Fund,* 932 F.2d 591, 596 (7th Cir.1991) (applying olfactory standard of clear error, *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.,* 866 F.2d 228, 233 (7th Cir.1988), *cert. denied,* 493 U.S. 847 [110 S.Ct. 141, 107 L.Ed.2d 100] (1989), to abuse of discretion review).

*Artis v. Hitachi Zosen Clearing, Inc.,* 967 F.2d 1132, 1141 (7th Cir.1992).

## IV. DISCUSSION

### A. *Issue of Mr. Rodriguez's Resume*

The first error asserted by the plaintiff is that he was precluded from cross-examining defendant Hoover concerning his review of plaintiff's resume. Mr. Rodriguez contends that he submitted both a resume (app. at 112–13) and "achievement history questionnaire" (app. at 130–35) when applying for the EOS–7 position. He reports in his brief that the defendants offered con-tradictory statements in their depositions: At first they testified that they had reviewed the candidates' resumes as part of the hiring process; later they stated that they had not seen resumes, but had confused the term "resume" with "achievement history questionnaire." Both in his motion for new trial and on appeal Mr. Rodriguez argues that his precluded cross-examination would have discredited Mr. Hoover's deposition testimony that he had reviewed only the achievement history questionnaire. According to the plaintiff, this demonstration of Mr. Hoover's lack of veracity was crucial to proving that race was a factor in the hiring process, for it would have revealed that Mr. Hoover actually had reviewed Mr. Rodriguez's resume and had ignored his superior qualifications when choosing the less qualified Black candidate.

The plaintiff's assertion is without merit. Our review of the record indicates that Mr. Rodriguez was never barred at trial from raising the question of Mr. Hoover's review of resumes. Plaintiff's single reference to resumes was not excluded.[4] Nor was such evidence precluded prior to trial.[5] Despite the fact that there is no record of the court's denial of plaintiff's cross-examination on this topic, Mr. Rodriguez nevertheless claimed the error by the court in his motion for a new trial and in his motion to correct the record. The court denied the motion for a new trial on the ground that the matter was of no probative value.[6] *See*

---

review is simply incorrect. This court has consistently accorded deference to the trial judge's substantial discretion when ruling on evidentiary matters, including decisions concerning the relevancy of evidence. *See, e.g., Williams v. Jader Fuel Co., Inc.,* 944 F.2d 1388, 1403 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2306, 119 L.Ed.2d 228 (1992); *Charles v. Daley,* 749 F.2d 452, 463 (7th Cir.1984) (citing cases).

**4.** During cross-examination of Mr. Hoover, plaintiff's counsel stated that "the word resume was in your [Mr. Hoover's] opinion somewhat misused or not used properly by you." Mr. Hoover answered, "No, I don't think that there was any or I used the term resume in terms of the structured resume, which is the Achievement History Questionnaire which I received." (Tr., Nov. 29, 1990, at 34.) No objection to this testimony was raised, and no ruling by the court was rendered.

**5.** Although the district court denied plaintiff's motion to compel discovery of the resumes in its Order of November 1, 1990, at the motion hearing the judge expressly stated that plaintiff was not precluded from raising before the jury the issue "whether or not these people [choosing the EOS–7 candidate] in fact were confused about the word resume." (Tr., Nov. 1, 1990 motion hearing, at 42.)

**6.** Our comparison of the plaintiff's achievement history questionnaire and his resume reveals that they contain substantially the same information. Since Mr. Hoover admitted that he had reviewed the questionnaire responses, the jury knew that Mr. Rodriguez's qualifications were clearly before him when he made his decision, in one or both forms.

Order of December 14, 1990. It denied the motion to correct the record because no correction was required.

Plaintiff's motion rests on counsel's belief that at an unreported bench conference I denied his attempt to cross-examine defendant Mark Hoover about Hoover's review of resumes submitted by certain applicants for the job in issue. Since it is my unvarying practice to have a reporter in attendance at every bench conference, there is no basis for plaintiff's motion. I decline to "correct" the record to show that plaintiff attempted to cross-examine defendant Hoover about the resumes and that the effort was denied at an unreported bench conference.

Order of July 24, 1991.

Appellate review must be based on the record before it. Nothing in the record indicates that the plaintiff was denied an opportunity to cross-examine defendant Hoover on the subject of the resumes, and nothing in his argument persuades us that the district court abused its discretion.[7] We therefore hold that the district court in no manner erred.

#### B. *Issue of Defendant Hoover's "Sudden Recollection"*

■ Plaintiff's general position, as explained to the court at oral argument, was that the defendants intended the EOS-7 post to be held by a Black, and therefore hired a less qualified Black candidate instead of Mr. Rodriguez, a non-Black with superior experience and qualifications. However, one person who had temporarily held the EOS-7 job before Ms. Jackson-Ward was Ms. Tara Ayers, a Caucasian. Plaintiff claims that defendant Hoover "suddenly and inexplicably" remembered Ms. Ayers only a week before the trial.

On November 23, 1990, the district court conducted a hearing on Mr. Rodriguez's motion to exclude this "last-minute" evidence. Once the court learned that the plaintiff had been told of Ms. Ayers' service as EOS-7 many weeks before trial, at the deposition of Pat Jackson-Ward on October 5, 1990, it denied the motion to exclude the evidence concerning Ms. Ayers.[8] However, testimony about Ms. Ayers was limited; it was agreed that information concerning her race, the dates of her appointment, and the identity of Mr. Hoover as the appointing officer was admissible, but that Mr. Hoover's motive in appointing Ms. Ayers was not. In its subsequent order the court explained the narrowly defined admissibility of evidence concerning Ms. Ayers:

> [D]efendants' testimony on the subject of Ms. Ayers' tenure as acting EOS-7 Affirmative Action Officer will be limited to a stipulation of the dates during which she held the position and to defendant Hoover's testimony that he made the appointment. Defendant Hoover will not be permitted to explain why he made the appointment or what his motives were in making it.

Order of November 26, 1990.

At trial Mr. Hoover testified, as agreed, that he appointed Ms. Ayers and that she was Caucasian. On cross-examination, plaintiff's counsel asked whether Mr. Hoover had remembered about Ms. Ayers only "about a week ago." Following defendants' objection, plaintiff's counsel stated that he believed he was allowed to impeach Mr. Hoover concerning his sudden recollection. He explained to the court:

> ... [T]his goes basically to motive, Your Honor, in the sense that if the gentleman didn't remember, there is a strong inference that he didn't even plan or care or had any plans, long-term plans with this particular person....

Tr., November 29, 1990, at 46. The court then precluded that motive-based question

---

7. The only case plaintiff cited in support of his claim, *Contractor Utility Sales v. Certain-Teed Products*, 638 F.2d 1061 (7th Cir.1981), is inapposite.

8. However, the court advised the plaintiff that, since Ms. Ayers was merely an acting EOS-7, such information was not fatal to his position that the permanent position might still have been intended for a Black. (Hearing Tr., Nov. 23, 1990, at 28.)

for the plaintiff, just as it had done for the defendants.

Considering the record as a whole, we note first that, in the hearing on the motion to exclude evidence concerning Tara Ayers, the district judge decided the admissibility of evidence concerning Ms. Ayers in a diplomatic fashion, forging a compromise that appears entirely sensible and one that was certainly no abuse of discretion. *See Artis,* 967 F.2d at 1143. No objection was raised to that ruling. The court's determination at trial to exclude such a line of questioning was consistent with its earlier pre-trial ruling. By denying plaintiff that cross-examination the court was not overlooking essential evidence or failing to consider relevant factors. *Jardien v. Winston Network, Inc.,* 888 F.2d 1151, 1159 (7th Cir. 1989); *Kasper v. Board of Election Com'rs,* 814 F.2d 332, 339 (7th Cir.1987). We agree with the district court that the issue was of questionable relevance, as well. At no point in his depositions did Mr. Hoover offer impeachable testimony concerning Ms. Ayers. Our review of the record makes clear that the district court correctly assessed the insignificance of the defendant's recollection of Ms. Ayers the week before trial. Giving due deference to the court's relevancy determination, *see New Burnham Prairie Homes,* 910 F.2d at 1482, we conclude that the district court did not abuse its discretion by excluding the evidence sought on cross-examination.

## V. CONCLUSION

The appeal herein hovers on the edge of frivolousness. The plaintiff failed to file a record that was sufficient for meaningful review, and both parties failed to follow the requirements of Fed.R.App.P. 10(b)(3). Nevertheless, because a full transcript was finally submitted by plaintiff after this court's mandate at oral argument, defendants' motion to dismiss this appeal is DENIED.

Following review of the district court's decisions, made more difficult by improper serial filings of portions of the record, we hold that the court neither committed error nor abused its discretion in its evidentiary determinations. Therefore the judgment of the trial court is AFFIRMED.